## STATE ex Rel. HAYNES et al., Relatrices, *v.* DISTRICT COURT et al., Respondents.

(No. 7,708.)

(Submitted June 22, 1937. Decided June 24, 1937.)

[70 Pac. (2d) 440.]

*Mr. Clyde McLemore, Mr. S. C. Ford* and *Mr. Sam D. Goza, Jr.,* for Petitioners.

Opinion: PER CURIAM.

Relatrices heretofore applied to this court for a writ of supervisory control directed to the district court of Lewis and Clark county and George W. Padbury, Jr., one of the judges thereof, seeking to review the action of the respondents in granting an ex parte restraining order. We declined to review this order, but directed the respondent court to proceed to hear the cause. At the opening of the hearing in the district court on the order to show cause why a permanent injunction should not issue, the relatrices moved to quash the restraining order theretofore issued. At the time of the previous application to this court leave was granted to the parties to apply to this court should occasion arise justifying such further application. The motion to vacate the restraining order was by the trial court denied, and relatrices have now made a further application to this court for a writ of supervisory control or other appropriate writ to review and annul the order denying the motion to vacate the restraining order.

The original complaint upon which the temporary restraining order was based was verified positively and asserted many and various reasons why a restraining order should be issued. As disclosed by the application of relatrices now pending before the court upon the motion to dissolve, they called the plaintiff in the proceeding pending in the district court as a witness who had verified the complaint positively. It is alleged in this application that he testified, "There were no facts in the petition to which he made positive verification that were within his own knowledge; that he did not know any of the facts therein stated were true."

Concerning the allegations as to various irregularities, plaintiff in the court below in his complaint made the following statements:

"m. That said alleged referendum petition is in excess of, and without the power reserved to the people in pursuance of the provisions of the Constitution of the State of Montana, for the reason that the said Act (House Bill No. 196) is a measure

relating to appropriations of money and provides for the appropriation of moneys and attempts and does set apart a portion of the revenue and public funds for the public purposes of the Public School General Fund and the Public Welfare Fund, and further attempts to, and does provide for the raising of revenue to meet the appropriations made to said funds, and further attempts and does set apart specific designated funds in case and for which provision has been made, and for said reasons alleged Referendum Petition is directed against House Bill No. 196 for the purpose of having said Act in operation until such time as it shall be passed upon at an election and the result has been determined and declared as provided by law, is contrary to and violative of the provisions of the State Constitution of the State of Montana (sec. 1, Art. V).

"n. That said alleged Referendum Petition is in excess and without the power reserved to the people in pursuance of the provisions of the State Constitution of the State of Montana for the reason that the said Act, House Bill No. 196, is a measure necessary for the immediate preservation of the public peace, health and safety in pursuance of the police power of the Legistive Assembly and of the State of Montana and said Act, House Bill No. 196, does provide restrictions, regulations and provisions for the protection of health, welfare and safety of the people of the State of Montana, in pursuance of the Constitution of the State, and for said reason said alleged Referendum is contrary to and violative of the provisions of the Constitution of the State of Montana (sec. 1, Art. V)."

We are uninformed as to which of the particular grounds alleged impelled the respondent court to issue the temporary restraining order—whether it was the foregoing allegations or others. These allegations are not of fact and they raise serious questions of law, which, if resolved in favor of the plaintiff below, would entitle him to the relief obtained. They are not questions of fact and therefore there were before the district court questions for solution independent of those based upon facts of which the plaintiff below has admitted he did not have

positive knowledge. In the case of *State ex rel. Bonners Ferry Lumber Co.* v. *District Court,* 69 Mont. 436, 222 Pac. 1050, 1052, what the court said with reference to an application for writ of supervisory control there made, is here pertinent and controlling. From what the court said we quote as follows: "If the present application be granted, no valid excuse could be offered for refusing a like application to review any alleged erroneous ruling of a trial court from the time an action is instituted until the final judgment is rendered, and, if such procedure were once adopted and followed, the time of this court would be consumed in hearing and determining such applications, with the result that the appellate jurisdiction would be destroyed for all practical purposes. * * * We do not mean to say that an exigent case may not be presented which will justify the exercise of this extraordinary power to correct a manifest wrong resulting from an erroneous ruling upon an intermediate question arising in the course of litigation; but we do say that upon the showing made in the *Interstate Lumber Company Case* [ (*State ex rel. Interstate Lumber Co.* v. *District Court*), 54 Mont. 602, 172 Pac. 1030] and in this instance, the remedy by appeal from the final judgment must be held to be plain, speedy, and adequate."

The district court is now engaged in a hearing on the order to show cause. Relatrices may prevail, and, if so, the injunction will be dissolved. If they are unsuccessful, they have their right to appeal which in this instance must be held to be plain, speedy, and adequate. Accordingly, the application for a writ is denied.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. JUSTICE ANGSTMAN:

I agree with the foregoing only on the supposition that the majority were correct in denying the writ heretofore applied for in this court in the same proceedings pending in the district court. As the records will disclose, I disagreed with the majority in denying the writ first applied for. I concur in the action

of the majority in this proceeding only by accepting the action of the majority on the first application as *stare decisis*.

MR. CHIEF JUSTICE SANDS, Dissenting:

In this case suit was brought to set aside the order of the Secretary of State suspending the operation of House Bill No. 196, known as the Retail Liquor Law, upon the presentation to him of petitions certified by the county clerks of thirty-nine counties to have been signed by 15 per cent., or over, of the qualified voters of such counties. Thereafter an application was made by Lucy T. McLemore et al. for a writ of supervisory control, in which application it was alleged that the petitions for the referendum filed with the Secretary of State, and upon which he was about to act, were very largely in excess of the number required to authorize him to advise the Governor of the filing of such petitions, and that such petitions were amply and legally sufficient to suspend the above law. This court took the application under consideration, and, assuming all of the allegations in the petition of the applicant, Jack Higgins, to be true, directed that the hearing continue with promptness. At the opening of the hearing the attorneys for Lucy T. McLemore called Jack Higgins to the witness-stand for several preliminary questions, and in answer to such questions he admitted that he had no personal knowledge of the matters of fact stated in his application to the district court for the restraining order issued against the Secretary of State. Since the application for the restraining order against the Secretary of State (sec. 9244, Rev. Codes) is required to contain "the material allegations of the complaint, setting forth the grounds therefor, be made positively and not upon information and belief," the application was without jurisdiction, and hence the order issued thereon was void. However, the district court, allegedly relying upon the questions of law set out in the complaint in subdivisions "m" and "n," wherein the affiant alleged that certain questions of law were therein proper issues relative to the requirements necessary to authorize a judge to issue a restraining order, ordered that the restraining order should stand, and thereupon

application was made to this court for a further hearing upon the application for writ of supervisory control, and such matters are now before us for consideration.

It appears to the writer that the district court was beyond jurisdiction in issuing an order to suspend the action of the Secretary of State, inasmuch as the Constitution, section 1, article V, has placed upon the Secretary of State the duty of ascertaining the number of authorized petitioners for a referendum, and such authority cannot be absorbed by the district court. In any event, a restraining order can be issued in matters of that kind only upon the positive affidavit of the applicant. The affidavit of the applicant in this case was positive in the first instance, but was later nullified by his testimony that he did not have personal knowledge of any of the facts stated in his petition. It should, therefore, be the duty of the district court, immediately upon such facts appearing, to annul his restraining order, and, if the district court fails to do its duty in that respect, it becomes the duty of this court to see that the positive direction of the statute is not disregarded. The Constitution (Art. VIII, sec. 2) says that this court "shall have general supervisory control over all inferior courts" of the state. Therefore, when it appears to a certainty that a district court is exceeding its jurisdiction in allowing this restraining order to remain in effect, unsupported by affidavit positive as to facts, it becomes the positive duty of this court to exercise its supervisory power to direct the discharge of that order.

I cannot understand how this court could have a more positive and direct illustration of its duty under its supervisory powers. The statute here is unusually strong and plain in this: That the Constitution directs that the people may, under the referendum, by signing petitions to the extent of 15 per cent. be privileged to vote upon any bill passed by the legislature before it becomes law, "except as to laws necessary for the immediate preservation of the public peace, health, or safety, and except as to laws relating to appropriations of money, and except as to laws for the submission of constitutional amendments, and except as to local or special laws, as enumerated in Article V, section 26, of

this Constitution." Certainly, this law, House Bill 196, is not intended as an appropriation for any purpose. Equally certain it is that the law is not intended for the immediate preservation of the public peace, health, or safety, and certain it is that it does not relate to local or special laws, as set out in the section 26 above. Therefore, no reason can be suggested why this law should override the constitutional referendum, one of the most cherished rights reserved to the people in our Constitution.

It has been truly said that the supervisory powers of this court over the inferior courts of the state should be sparingly exercised, but it is equally true that where the district courts are completely ignoring the definite mandatory provisions of our Constitution, and particularly ignoring those rights especially reserved to the people, this court should not hesitate to insist upon the strict observance of the Constitution in respect to these rights reserved to the people. I, therefore, most earnestly urge that this court exercise its constitutional supervisory power and direct that the right of referendum reserved to the people be liberally construed and observed to accomplish that end; that in this case House Bill No. 196 be held in suspense and not put into effect, or continue in effect, until the people have had an opportunity to express their views thereon at the next general election.